## Richmond.

JOHNSON v. RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD Co.

January 15, 1903.

1. CONTRACTS—*Option to Convert Debt Into Stock—Overlooking Option—Payment of Debt—Failure of Debtor to Mention Option.*—If the holder of a certificate of indebtedness of a corporation negligently overlooks the fact, plainly printed on the back of the certificate, that it is convertible at par into the stock of the corporation, which is then selling at a premium, and collects the certificate, he cannot, on discovering his error, tender back the money and compel the corporation to issue him stock therefor at par, where his action was not brought about by any fraud or improper conduct on the part of the corporation, or any of its officers, or agents. The corporation is under no obligation to call his attention to his privilege. Courts of justice do not undertake to shield persons, not laboring under disability, from the consequences of their own indifference to and disregard of ordinary business methods and precautions.

Appeal from a decree of the Law and Equity Court of the city of Richmond, pronounced April 22, 1901, in a suit in chancery, wherein appellant was the complainant, and the appellee was the defendant.

*Affirmed.*

The opinion states the case.

*Wyndham R. Meredith* and *W. O. Skelton,* for the appellant.

*Leake & Carter,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

The alleged grievance complained of in the original and amended bills in this case is, that appellant, John R. Johnson, was misled by a telegram from his partner, George L. Street, sent at the instance of E. T. D. Myers, President of the Richmond, Fredericksburg and Potomac Railroad Company, into collecting a certificate of debt of appellee for $5,000, instead of converting it, as he had the privilege of doing by the provisions of the certificate, into stock of the company, which at that time was worth $140 per share in open market.

The facts out of which the transaction arose are as follows: Appellant resided in the city of Philadelphia, but was a member of the firm of J. R. Johnson and Company, composed of himself and George L. Street, doing business near the city of Manchester, Virginia.   On February 17, 1882, appellant purchased the certificate in question, each hundred dollars of which were by its terms convertible at the pleasure of the holder into one share of the capital stock of the company at any time previous to the first day of July, 1879.   On the back of the certificate was printed the following:

"The payment of the principal of this certificate of debt is extended to the first day of July, 1899, with the continuance of all existing securities for the payment of the principal and interest, and all the rights, privileges, and advantages pertaining thereto under resolution of the Board of Directors of May 17, 1879."

On June 29, 1899, Myers telephoned Street to have the certificate in the city of Richmond, Virginia, July 1, 1899, as the company wanted to pay it on that day, but said nothing of the privilege of exchanging it for stock.   Street, acting in accordance with the telephone message, immediately sent the following telegram to the appellant:

"Mail to-day your Richmond, Fredericksburg and Potomac

Railroad Company bond : are called in July first.   Major Myers requests have here to-morrow sure, so they can pay the same."

The bill charges that appellant had entire confidence in Myers, and, being taken by surprise by the telegram, acted hurriedly and without reflection, having no recollection or knowledge whatever of the privilege of exchanging the certificate for stock—a privilege of which he would naturally have availed himself, as such exchange would have profited him nearly $2,000.

The certificate was in appellant's box with the Guarantee Trust and Safe Deposit Company of Philadelphia.   The message was sent to appellant at his place of business in Wilmington, Delaware, and was received too late on the 29th for him to reach Philadelphia before the office of the Trust Company closed.   On the morning of the 30th he did not go to Wilmington by an early train, as was his usual custom, but delayed his departure until a 10 :00 o'clock train.   The office of the Trust Company was never opened until half-past nine o'clock, so that he was greatly hurried, and without time for reflection or examination, took the certificate from the vault, signed and had witnessed the blank power of attorney on its back, and deposited the certificate as cash and a draft for the last instalment of interest for collection by the Trust Company.

The certificate was forwarded for collection through the medium of a Lynchburg bank, and was presented at the office of the railroad company and paid July 5.

On July 7 appellant, having learned of his privilege of exchanging the certificate for stock, tendered the cash received on the certificate, and demanded stock in lieu of it.   The matter was referred to the Board of Directors, and the demand was refused.   The relief prayed for is that the action of the railroad company in paying the certificate of debt in cash at its face value be set aside, and that the company be required to issue in lieu thereof the shares of stock called for by the certificate.

The case was heard on demurrer, which the trial court sustained, and dismissed the original and amended bills, with costs.

It is not perceived how a different conclusion could have been reached from appellant's own version of the facts.   The bills do not charge actual fraud, either upon the company or its president, nor do they charge such facts as amount to legal fraud. As remarked, the certificate of indebtedness matured July 1, 1879, at which date the privilege of exchanging it for stock would have expired, but for the circumstance that the option was extended, by resolution of the Board of Directors, until July 1, 1899.   There were no relations of confidence existing between the parties.   Appellant, who was a man of large business affairs, in no way sought the advice of the company or its president, and the certificate of indebtedness, with extension of its privileges printed in red ink on the back of it, was in his possession, and afforded ready means of information as to his rights.   The company and its president were justified in supposing that he was fully apprised of his rights, or would at least inform himself by reading the certificate and its indorsement. But however that may be, the means and sources of information were equally accessible to both parties; and the ignorance and self-deception of appellant were not brought about by the conduct of Myers, who employed neither art nor artifice to prevent investigation or stifle information, and rested under no obligation, legal or moral, to volunteer counsel.

In the practical administration of justice by the courts, they do not, and cannot, undertake to shield persons, laboring under no disability, from the consequences of their own indifference and disregard of ordinary business methods and precautions.

Where a duty rests upon a party in possession of facts, by confidence reposed or otherwise, to communicate such facts, he must do so truly and fairly.   But it would be contrary to sound policy to establish fiduciary relations, where none exist in reality, between debtor and creditor, and impose upon the former

obligations which he never assumed, merely to protect the latter against the consequences of his own carelessness. To do so, would be to place a premium on negligence and laches.

"The common law affords to every one reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence or folly, or a careless indifference to the ordinary and available means of information. It reconciles the claims of convenience with the duties of good faith to every extent compatible with the interest of commerce." 2 Kent's Com. (4th Ed.), 483.

To so extend the doctrine as to grant the relief prayed for in this case, would encumber and embarrass ordinary business relations between debtor and creditor, and impose the unreasonable burden upon the former of advising the latter, although possessed of equal facilities for information, of his rights, or else incur the hazard of being held liable for his carelessness or lapse of memory.

A proposition to remedy the supposed hardship of particular cases, by the establishment of a doctrine which would lead to such mischievous consequences, cannot be entertained.

The questions involved in this case are dependent upon familiar principles, and a review of the authorities relied on is deemed unnecessary.

The decree complained of is plainly right, and must be affirmed.

*Affirmed.*